

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEAST DIVISION

| | | |
|---|---|---|
| JEANNETTE ROGERS DULAN, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | CV-02-CO-02445-NE |
| | ] | |
| HUNTSVILLE HOSPITAL ASSOC., INC., | ] | |
| et al., | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.     Introduction.

The Court currently has for consideration a motion for summary judgment, which was filed by defendants Huntsville Hospital Association, Inc. ("the Hospital"), and Dr. Chris Andershock on December 28, 2004.  (Doc. 80.) The plaintiff, Jeanette Dulan, has asserted claims against the Hospital under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, *et seq.*, for failure to provide an adequate medical screening examination and delaying treatment in order to inquire about the plaintiff's method of payment or insurance status, and under Alabama state law for vicarious liability, negligent supervision or maintenance, and

negligent failure to terminate Dr. Andershock as an employee (Doc. 1.) Plaintiff has also sued Dr. Andershock for medical negligence and wantonness under Alabama state law, as well as discrimination based on race and/or sex under 42 U.S.C. § 1981.  (*Id.*)  The Court previously dismissed Plaintiff's EMTALA claim for failure to provide medical treatment necessary to stabilize the plaintiff.  (Doc. 12.)

This Court also has for consideration Defendants' motion to strike certain evidentiary materials filed by the plaintiff in opposition to summary judgment.  (Doc. 100.)  In her responsive submission to that motion, Plaintiff moved to strike several of Defendants' evidentiary exhibits.  (Doc. 104.)

The issues raised in these motions have been briefed and are now ripe for decision.  Upon due consideration, the motions to strike are due to be denied; Defendants' motion for summary judgment is due to be granted in all respects.

II.    Facts.[1]

_____The plaintiff, Jeanette Dulan ("Dulan"), a fifty-five year-old African American female and resident of Maryland, developed chest pain on October 6, 2000, while visiting her parents in Huntsville, Alabama.  (Doc. 103 at 1.)  Dulan's mother took her to the emergency room at Huntsville Hospital, and Plaintiff states that they arrived around 12:30 P.M.  (Doc. 1 at Ex. A p.1.)  Upon her arrival, an emergency room employee met Plaintiff's car with a wheelchair and wheeled her into the hospital.  (*Id.*)  Plaintiff told the front desk clerk that she was experiencing chest pain and needed help.  (*Id.*)  The desk clerk asked her to complete a short form.  She attempted to complete the form, but because she was in pain, she was unable to finish answering the questions.  (*Id.*; Doc. 97 at Ex. 7 pp. 81, 86.)  Plaintiff only recalls providing her name and address.  (Doc. 97 at Ex. 7 p. 86.)  Plaintiff's mother then wheeled her into the waiting room.  (Doc. 1 at Ex. A.)

Dulan waited approximately fifteen to twenty minutes before she was

_____

[1]The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

called to the triage area.  (Doc. 97 at Ex. 7 pp. 92-93.)  The triage nurse assessed Dulan's condition, then told her to return to the waiting area until someone called for her.  (Doc. 103 at 4.)  After waiting for "not more than fifteen minutes," an employee called Plaintiff to the registration desk. (Docs. 103 at 4; 97 at Ex.7 p. 105.)   The employee asked for personal information, such as Plaintiff's work, address, and insurance information. (Doc. 97 at Ex. 7 p. 103.)  Dulan did not have her insurance card, but she did tell the employee the name of her insurance company.  (*Id*. at Ex. 7 p. 103.) She spoke with the registration clerk for less than five minutes (*Id*. at Ex. 7 p. 107), and then a nurse took her to the treatment area (Doc. 103 at 4). There, tests were run, X-rays were taken, and she was examined by Dr. Chris Andershock—a white male and the hospital's emergency room physician. (Doc. 1 at Ex. A p. 2.)

Later, a physician's assistant examined Plaintiff and she was given a nitro tablet.  (*Id*.)  Around 8:00 P.M. or 8:30 P.M., Plaintiff was examined by a cardiologist.  (*Id*.)  Dulan was admitted to the Hospital's cardiac care unit that evening.  The cardiologist ordered a cardiac catheterization, and the procedure was performed that night.  The catheterization showed that

Plaintiff was suffering an anterior myocardial infarction.  (Doc. 103 at 4.)
The Hospital proceeded to treat the heart condition, and Plaintiff underwent
an angiography and angioplasty resulting in an intracoronary stent
placement.  (Doc. 1 at Ex. A p. 3.)  Plaintiff was discharged on October 11,
2000, and commenced this action against the defendants on October 4, 2002.

III.    Motions to Strike.

Defendants moved to strike certain evidentiary materials filed by the
plaintiff in opposition to their motion for summary judgment, as well as
ceratin statements made in Plaintiff's brief referring to that evidence.  (Doc.
100.) Defendants argue that several of Plaintiff's evidentiary submissions are
unsworn, hearsay, irrelevant, and/or inadmissible.  (*Id*.)  In her response
submission, Plaintiff moved to strike some of Defendants' exhibits on the
same grounds "if the court is inclined to agree with Defendant[s]" that
Plaintiff's evidence should be stricken.  (Doc. 104 at 5.)

The materiality, relevancy, and potential admissibility of evidence at
trial was carefully weighed by the Court during the summary judgment
process.  Immaterial evidence, irrelevant evidence, and evidence that could
not be reduced to admissible form, *see Macuba v. Deboer*, 193 F.3d 1316,

1322-23 (11th Cir. 1999), was rejected by this Court when it made its final decision on Defendants' summary judgment motion.  For these reasons, the motions to strike will be denied.

IV.    Summary Judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the

court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

A.    EMTALA.

Plaintiff alleges that the Hospital is liable under EMTALA because it failed to provide her with an appropriate medical screening to determine whether an emergency medical condition existed in violation of 42 U.S.C. § 1395dd(a), and improperly delayed an appropriate medical screening and treatment in order to inquire about her insurance status in violation of 42 U.S.C. § 1395dd(h). (Doc. 1.) The Hospital argues that Plaintiff does not

have evidence sufficient to maintain her EMTALA claims and summary judgment is due to be granted.  (Doc. 81.)

       1.     § 1395dd(a).

"In 1986, Congress enacted EMTALA in response to widely publicized reports of emergency care providers transferring indigent patients from one hospital to the next while the patients' emergency medical conditions worsened." *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002) (en banc). "EMTALA was designed specifically to address this important societal concern; it was not intended to be a federal malpractice statute." *Id.*

"Section 1395dd(a) of EMTALA requires hospitals to provide persons requiring emergency medical treatment with 'an appropriate medical screening examination.'" *Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir. 1994).  "The Act does not define 'appropriate medical screening.'  But, the congressional purpose behind the enactment of EMTALA supports the conclusion that this language only requires a hospital to provide . . . patients with a medical screening similar to one which they would provide any other patient." *Id.*  "[A] hospital has every right to tailor its screening procedures to a patient to account for her condition, stated symptoms, and the

determinations made by her personal physician." *Nolen v. Boca Raton Cmty.*

*Hosp., Inc.*, 373 F.3d 1151, 1155 (11th Cir. 2004).

Plaintiff contends that she has provided sufficient evidence that she did not receive an appropriate medical screening through the following: (1) evidence that the Hospital failed to follow "clear, universally-accepted guidelines" and/or its own procedures (*Id.* at 3, 7, 18, 23, 24, 62-66, 70); (2) evidence that there are racial disparities in the Hospital's "administration of aspirin to persons visiting the Hospital's emergency room" (*Id.* at 8, 18, 25); (3) studies showing that there is nation-wide discrimination on the basis of race and gender in treating victims of heart attack (*Id.* at 51, 55, 70-71, 74-75); (4) evidence that Dr. Andershock reported Plaintiff's pain as "mild" when she was suffering "visible" excruciating pain (*Id.* at 53, 58, 68); (5) the fact that the Hospital did not diagnose Plaintiff's heart condition for approximately eight hours (*Id.* at 53, 55); and (6) evidence that before Plaintiff's heart condition was diagnosed, it was the Hospital's intent to discharge Plaintiff that day and have her return three days later for testing (*Id.* at 53, 56, 59).  Plaintiff contends that this evidence demonstrates that

the Hospital "never had any intention of providing [Plaintiff with] 'a medical screening calculated to identify critical medical conditions.'" (*Id.* at 57.)[2]

However, "EMTALA was not intended to establish guidelines for patient care, to replace available state remedies, or to provide a federal remedy for medical negligence." *Harry v. Marchant*, 291 F.3d 767, 773 (11th Cir. 2002). A contention that a hospital did not follow certain policies or guidelines for victims exhibiting symptoms of heart attack is not sufficient to prevail on an EMTALA claim. *Nolen v. Boca Raton Cmty. Hosp.*, 373 F.3d 1151, 1154-55 (11th Cir. 2004). Evidence of widespread racial or gender-related disparities in the healthcare provided to individuals exhibiting symptoms of heart attack does not show that Plaintiff experienced a disparate medical screening in this case. In addition, even assuming that Plaintiff's study showing that African-American patients with heart problems were treated differently at the Hospital with regard to the administration of aspirin was statistically significant, the study relates to the *treatment* of *diagnosed* heart conditions

---

[2]The Court notes that Plaintiff consistently cites to her Complaint throughout her response brief in opposition to summary judgment when referring to "evidence" in her favor. At summary judgment, Plaintiff is required to go beyond the pleadings to show that she has evidence to establish a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

and not the screening examination at issue in this case.[3] (Doc. 96 at Ex. 3 p. 100, Ex. 4 p. 101.)

"As long as the Hospital screened [Plaintiff] in a manner consistent with the screening that any other patient in the care of a private physician would have received, there can be no liability under the EMTALA." *Nolen v. Boca Raton Cmty. Hosp.*, 373 F.3d 1151, 1154-55 (11th Cir. 2004). The Hospital in this case has presented evidence that Plaintiff's screening was appropriate, and consistent with the quality of screening that a similarly-situated patient would have received. Plaintiff has "failed to present even a single affidavit of a *physician* to dispute the adequacy of the screening provided by the Hospital." *Id*. at 1155 (emphasis added).[4]

---

[3]The study also shows that Plaintiff received aspirin. (Doc. 82 at Ex. L Attach. C.)

[4]Plaintiff contends that she has submitted the transcript of a radio broadcast where a "Dr. Eaton," who allegedly stated that it was his opinion that the Hospital had breached its duty of care to Plaintiff and violated EMTALA. This evidence was apparently attached to a brief in opposition to Defendants' motion to dismiss. (Doc. 95 at 11.) However, the presiding Judge in this case when the motion to dismiss was filed did not require that briefs in support or opposition be made a part of the record, and the brief and evidence referenced by Plaintiff was not filed and is not a part of the record. Therefore, that evidence is not before the Court for consideration at this time.

Plaintiff also emphasizes the findings of the Centers for Medicare & Medicaid Services (CMS) throughout her response brief. Plaintiff has attempted to argue that CMS's legal conclusions are binding on this Court. The Court rejected that assertion when it denied Plaintiff's motion to have the findings receive collateral estoppel effect. (Doc. 87.) CMS's legal conclusions are also not evidence that Defendants are liable. (The Court notes, however, that CMS's legal conclusions only pertain to an alleged violation of §

Plaintiff's contentions that Dr. Andershock mischaracterized her "visible" pain and that the Hospital took too long to discover her heart condition and intended to discharge her before the heart condition was accurately diagnosed are also not sufficient to prevail on her EMTALA claim. The Eleventh Circuit Court of Appeals has soundly rejected the "argument that the 'appropriateness' of the screening should be determined by its adequacy in identifying the patient's illness." *Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir. 1994). "Section 1395dd(a) is not designed to redress a negligent diagnosis by the hospital." *Id*. "It is not intended to ensure each emergency room patient a correct diagnosis." *Harry v. Marchant*, 237 F.3d 1315, 1319 (11th Cir. 2001), *rehearing en banc granted on other grounds and opinion vacated by* 259 F.3d 1310 (11th Cir. 2001), *reinstated in part on rehearing by* 291 F.3d 767 (11th Cir. 2002).[5] Although the Hospital did not immediately discover Plaintiff's heart condition, the condition was

--------

1395dd(h), and not § 1395dd(a).)  Even if the Court accepts CMS's findings that the Hospital violated certain alleged policies and procedures, this is not sufficient to establish a violation of § 1395dd(a).  *Nolen v. Boca Raton Cmty. Hosp.*, 373 F.3d 1151, 1154-55 (11th Cir. 2004).

[5]"Rehearing *en banc* was granted solely to determine the scope of EMTALA's stabilization requirement." *Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002).  This requirement is not at issue in this case.

ultimately diagnosed, and Plaintiff was admitted and treated for the condition.  Plaintiff has not produced any competent evidence to support her claim that the Hospital violated § 1395dd(a) by failing to provide her with a medical screening similar to one that they would provide any other patient.

      2.    § 1395dd(h).

Section 1395dd(h) of EMTALA provides that hospitals "may not delay provision of an appropriate medical screening examination . . . or further medical examination and treatment . . . in order to inquire about the individual's method of payment or insurance status." 42 U.S.C. § 1395dd(h). Plaintiff alleges that the Hospital violated this provision when it asked her for insurance information.  Before screening, Plaintiff was asked to fill out a short registration form, which Plaintiff did not complete.  Plaintiff then waited about fifteen to twenty minutes before being taken to the triage area.  After being assessed in triage, Plaintiff was returned to the waiting room.  Approximately fifteen minutes later, a hospital employee inquired about information Plaintiff had not provided on the registration form, including her insurance information.  Plaintiff did not have her insurance card, but she provided the name of the insurance company.  After speaking

with this hospital employee for no more than five minutes, a nurse returned and took Plaintiff to the treatment area.

The fact that the Hospital inquired about Plaintiff's insurance information does not establish a violation of § 1395dd(h).  Rather, Plaintiff must show that her medical screening or treatment was delayed because of the inquiry.  Federal Regulations provide that "[h]ospitals may follow reasonable registration processes for individuals for whom examination or treatment is required by this section, including asking whether an individual is insured and, if so, what that insurance is, as long as that inquiry does not delay screening or treatment."  42 C.F.R. § 489.24(d)(4)(iv); *see also Jakubiec v. Sacred Heart Health Sys., Inc.*, 2005 WL 1261443 at *3 (N.D. Fla. May 27, 2005) ("Requiring an individual to sign a standard intake form does not violate EMTALA, and hospitals may follow reasonable registration processes, including asking whether the individual is insured.") (quoting *Quinn v. BJC Health Sys.*, 364 F. Supp. 2d 1046 (E.D. Mo. 2005)).  Plaintiff has not produced any evidence that her screening or treatment was delayed *on account of* the Hospital's inquiries into her insurance status.[6]

---

[6]Plaintiff argues that CMS's conclusion that the Hospital "failed to avoid delay in providing a medical screening exam in order to inquire about the individual's method of

Even if this Court concluded that Plaintiff did have some evidence that the Hospital violated § 1395dd(h), Defendant argues that EMTALA only allows a plaintiff to recover damages for personal harm suffered "as a direct result" of the violation and appropriate equitable relief. 42 U.S.C. § 1395dd(d)(2)(A). (Doc. 81 at 43.) Plaintiff has not addressed the damages issue in her brief, and has not presented any competent medical evidence that she suffered any personal harm as a result of the alleged delay caused by the Hospital's inquiries into her insurance status.

For these reasons, the Hospital's motion for summary judgment on Plaintiff's EMTALA claims is due to be granted.

B.    Section 1981.

_____

payment or insurance status," creates an issue of material fact in her favor. (Doc. 96 at Ex. 1.) However, legal conclusions are not evidence or helpful in this instance. CMS concluded that the Hospital committed a violation because "it was determined . . . [that the] Hospital's Emergency Department staff failed to provide [Plaintiff] with an appropriate medical screening prior to inquiring about her insurance coverage." (Doc. 96 at Ex. 2.) As discussed by this Court, this is not the appropriate legal standard for assessing a violation of § 1395dd(h) of EMTALA. A defendant does not violate the provision simply by asking about insurance before the medical screening. Rather, a plaintiff must establish that the defendant delayed the screening or treatment *because of* the inquiry. According to Plaintiff, when the nurse returned, she wheeled Plaintiff directly to the treatment area and ignored the Hospital employee's protests that she did not have all of Plaintiff's registration information.

Plaintiff contends that Dr. Andershock violated 42 U.S.C. 1981 by denying her the same "'benefits, privileges, terms, and conditions of the contractual relationship,' that [he] would have afforded to a similarly situated White/Caucasian patient. (Doc. 1 at 20-21.) Dr. Andershock argues that he is entitled to summary judgment on Plaintiff's § 1981 claim because: (1) Plaintiff cannot establish the existence of an underlying contract to support her claim; (2) a § 1981 claim is unavailable against state actors such as Dr. Andershock; and (3) Plaintiff has not presented evidence of intentional discrimination. (Doc. 81 at 43.)

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. A plaintiff alleging a non-employment based discrimination claim under § 1981 must establish three things in order to survive a motion for summary judgment: "(1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination

concerned one or more of the activities enumerated in the statute (in this case, the making and enforcing of a contract)." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000).

Plaintiff does not address the issue of contractual relationships in her responsive submission to the Court.  In fact, there is no evidence in the record of an express contract with Dr. Andershock or the Hospital; there is no evidence of an attempted contract with Dr. Andershock or the Hospital; and Alabama law does not recognize implied contracts to exercise due care in the delivery of medical services by a physician or a hospital.  *Marsh v. St. Margaret's Hospital*, 535 So. 2d 147, 149-50 (Ala. 1985); *Lemmond v. Sewell*, 473 So. 2d 1047, 148-49 (Ala. 1985); *Berry v. Druid City Hospital Board*, 333 So. 2d 796, 799 (Ala. 1976); *Smith v. Housten County Hospital Board*, 255 So. 2d 328, 330 (Ala. 1971).  Because Plaintiff has failed to establish the existence of a contractual relationship to exercise due care in her medical treatment sufficient to support her claim under § 1981, Dr. Andershock is entitled to summary judgment on this issue.

Even if there was a contractual relationship, Plaintiff's § 1981 claim fails because she has not produced any evidence that "the defendant had an

intent to treat . . . her less favorably because of [her race]." *Rutstein*, 211 F.3d at 1235.    Section 1981 claims require proof of intentional discrimination.  *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S. Ct. 3141, 3150, 73 L. Ed. 2d 835 (1982) (holding that "§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination"); *Ferrill v. The Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999); *Donaire v. NME Hosp.*, 27 F.3d 507, 509 (11th Cir. 1994); *Brown v. Am. Honda Motor Co.*, 939 F.2d 946 (11th Cir. 1991);  *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1453 (11th Cir. 1987); *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1350 (11th Cir. 1983).  Plaintiff offers the following evidence in support of her claim: (1) the fact that she is African American and Dr. Andershock is White/Caucasian, (2) articles alleging that there is widespread racial discrimination in healthcare, particularly in the treatment of heart disease, and (3) Plaintiff's disparity study that allegedly shows a difference in the administration of aspirin to African Americans versus Caucasians in the Hospital's emergency room.  The latter two items are not at all relevant to Dr. Andershock's individual treatment of Plaintiff on October 6, 2005, and the fact that Defendant is White/Caucasian is simply not sufficient to

establish that he had an intent to discriminate against Plaintiff because she is African American.  Therefore, summary judgment is due to be granted on Plaintiff's § 1981 claim.

C.     State Law Medical Malpractice.

Plaintiff alleges Alabama state law medical malpractice claims against both the Hospital and Dr. Andershock.   Plaintiff maintains that Dr. Andershock is liable for medical negligence and wantonness, and that the Hospital is (1) vicariously liable for Dr. Andershock's negligence, and (2) negligent in "failing to have in place and/or failing to correctly utilize proper procedures and protocols for the evaluation of heart attack patients in its emergency room (such as [P]laintiff) and negligently granting, maintaining, and failing to terminate defendant Dr. Andershock." (Doc. 1 at 19.)  Defendants contend that they are entitled to summary judgment on all of Plaintiff's state law claims.

Under Alabama law, in order to prove liability on her medical malpractice claims against the Hospital and Dr. Andershock, Plaintiff must establish that a duty of care exists, the appropriate standard of care, the defendant(s) breached that standard of care, and such breach was the

proximate cause of injury to the plaintiff. *Bradley v. Miller*, 878 So. 2d 262, 266 (Ala. 2003); *Hauseman v. Univ. of Alabama Health Servs.*, 793 So. 2d 730, 734 (Ala. 2000); *Looney v. Davis*, 721 So. 2d 152, 157 (Ala. 1998).  In order to survive a motion for summary judgment, generally a plaintiff must  "submit competent expert medical testimony to prove that the defendant violated the standard of care [established by law]." *Wilson v. Teng*, 786 So. 2d 485, 498 (Ala. 2000); *see also, e.g.*, *Schuffert v. Morgan*, 777 So. 2d 87, 91 (Ala. 2000); *Looney v. Davis*, 721 So. 2d 152, 157 (Ala. 1998); *Univ. of Alabama Health Servs. Found., P.C. v. Bush*, 638 So. 2d 794, 798 (Ala. 1994). Defendants have provided evidence that the standard of care was satisfied in this case.  Plaintiff has failed to produce any expert testimony that refutes this evidence.[7]  Therefore, Defendants are entitled to summary judgment on Plaintiff's medical malpractice claims of negligence, wantonness, and vicarious liability.

Because Plaintiff has not established that she has a cause of action against Dr. Andershock for negligence, and because Plaintiff has also failed

---

[7]Plaintiff has also failed to produce any expert testimony regarding the applicable standard of care and whether Defendants' alleged breach proximately caused Plaintiff's alleged injury.

to produce any expert testimony regarding the proper standard of care that a Hospital must follow in supervising its physicians and employees, or the alleged breach of that standard, *see Mann v. Health Care Auth. of the City of Huntsville*, 653 So. 2d 941, 942 (Ala. 1995), the Hospital is entitled to summary judgment on Plaintiff's claim for negligent supervision and maintenance of Dr. Andershock.

V.     Conclusion.

For the reasons stated above, the motions to strike filed by both Defendants and Plaintiff will be denied; however, Defendants' motion for summary judgment is due to be granted in all respects.  A separate order in conformity with this opinion will be entered.

Done this 5th day of August 2005.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153